CIACCIO, Judge.
This is an expropriation suit instituted by the Board of Commissioners of the Lake Borgne Basin Levee District (Levee District) and the St. Bernard Parish Police Jury against Richard Acosta, Jr., et al. under the provisions of LSA-R.S. 38:351. After filing its petition for expropriation on March 16, 1984, the Levee District deposited the sum of $1,000.00 for the taking of five parcels of land belonging to the defendants for the purpose of constructing a levee, drainage canal and berm.
The property expropriated is a strip measuring 111.25- feet in depth by 40 feet in width or 4,450 square feet on each of five lots in Fernandez Subdivision of Delacroix Island in St. Bernard Parish. The lots are designated as 43C, 44C, 45C, 46C and 47C. These are to the rear of lots 43, 44, 45, 46 and 47 which front Louisiana Highway 300. Each original front lot measures 40 feet in width abutting the highway by a depth between equal and parallel lines of 150 feet. The C lots or rear lots all measure 40 feet and abut their same numbered lot in front. The levee, canal and berm built by the Levee District traverse defendants’ land on a diagonal leaving a larger portion behind the levee on lot 47C than on the other lots. (See appendix).
In response to the Levee District’s petition, the defendants filed an answer alleging that as a result of the expropriation and construction of the levee, canal and berm, 15,400 square feet of their property remained outside the new levee rendering *17 it inaccessible and useless. They argued that defendants, Richard Acosta, Jr. and his wife, Louise Roberts Acosta, were entitled to the sum of $9,828.00 as fair compensation for their interest in the property taken and $10,000.00 each as a result of the loss of use of their property and defendant Millicent Wall Acosta was entitled to $7,155.00 as compensation for her interest in the property and $10,000.00 in severance damages.
After a trial, the district court judge rendered judgment in favor of defendants, awarding Richard and Louise Acosta $4,040.70 and Millicent Acosta $3,001.40 as compensation for the taking of their land, the cost of the temporary servitude for construction purposes and severance damages, in addition to interest and $750.00 in expert witness fees. The Levee District appealed.
The issues raised on appeal relate to value of the property taken, severance damages and the value of the temporary construction servitude.
The Levee District contends the trial judge failed to establish the nature of the land taken or its highest and best use as required by law. In failing to do so, it argues the trial judge erroneously valued the expropriated property at 17.4 cents per square foot, a rate the Levee District contends is excessive.
Property owners are constitutionally entitled to just compensation for property taken. U.S.C.A. Const.Amend. 5; LSA-Const. Art. 1, Sec. 4. The landowner is entitled to the market value of his property at the time of the expropriation, considered in light of its highest and best use. Highest and best use is the most favorable employment to which the land is adaptable and to which the property may be put in the not too distant future. State, Department of Highways v. Bray, 511 So.2d 1300 (La.App. 2d Cir.1987), writ denied, 515 So.2d 446 (La.1987).
The most reliable and approved method for determining the fair market value of immovable property is to consider comparable sales, adjusting them to compensate for their good and bad features with regard to the subject. State, Department of Transportation & Development v. Mayet, 521 So.2d 671 (La.App. 1st Cir.1988).
In the present case, both the Levee District’s and defendants’ appraisers testified at trial and their reports were introduced into evidence. The Levee District also introduced into evidence an appraisal report prepared by real estate appraiser Angus Eason who had died prior to trial.
Martin Rothschild, the Levee District’s appraiser, testified that he appraised lots 43C, 44C, 45C, 46C and 47C in August of 1983. He testified the property in question was vacant undeveloped land classified by the U.S. Army Corps of Engineers as wetlands. He testified that its highest and best use was speculative but the land was primarily used for hunting, trapping and mineral rights. In making his appraisal, Rothschild testified that he considered eleven comparable sales none of which included the sale of designated C lots in the Fernandez Subdivision. Using the comparables he determined the value of the land was $100.00 per acre and the total value of the five lots expropriated was $105.00. The appraisal report introduced into evidence reflects that Eason valued the expropriated property at $112.00.
Donald Hamby appraised the five lots in April of 1984 and testified at trial as a witness for the defendants. He testified that he considered eight comparable sales in making his appraisal of the property, two of which involved the sale of C lots within the Fernandez Subdivision. According to Hamby, the Hoffman to Bavido sale in November 1982 consisted of the sale of lots 173, 174, 173C and 174C in the Fernandez Subdivision. Lots 173 and 174 each measured 40 feet by 150 feet. There were no improvements on the four lots and they sold for a total of $21,250.
The other comparable sale consisting of the sale of C lots in the Fernandez Subdivision was the Floyd to Winchester sale in September 1983. Included in that transaction was the sale of lots 178, 179, 178C and-179C. Lots 178 and 179 fronting La. Hwy *18 300 measured 40 feet by 160 feet each while the rear lots, 178C and 179C, each measured 40 feet by 350 feet. These four lots without improvements sold for a total of $19,500.00. Using these comparable sales, Hamby testified the property owned by Richard and Louise Acosta, lots 43C, 44C, ⅝ of 45C and ¾⅞ of 47C, had a total value of $21,750.00 at the time of expropriation, while the lots owned by Millicent Acosta, 46C, ½ of 45C and ⅛ of 47C, had a total value of $14,546. Though none of the comparable sales considered consisted solely of the sale of C lots, Hamby testified that in making his appraisal where the sale included the front lot and rear C lot, he attributed ⅜ of the total value to the front lots a,nd ½ of the total value to the C lot.
In making its determination, the trial court found the only true comparable sales were the Hoffman to Bavido sale and the Floyd to Winchester sale. The judge considered the sale of lots 178, 179, 178C and 179C from Floyd to Winchester sold for $19,500.00 and apparently determined the sale of one front and one C lot sold for one-half of that amount or $9,750.00 and the value of the C lot was worth ⅝ of that amount or $2,437.50. Using this figure, he calculated that each square foot for a C lot was worth 17.4 cents ($2,437,50 divided by 14,000). As a result of the taking each lot was decreased by 4,450 square feet. The judge determined the land expropriated from each lot had a value of $777.30 (4,450 X .174).
In an expropriation proceeding, the trial court is not required to accept or reject the testimony of any particular witness, but may give whatever weight it considers appropriate to the testimony of any and all witnesses in making its factual determination of the value of the property. The trial court may reach a conclusion which does not coincide with the testimony of any witness. State, Department of Transportation and Development v. Mayet, supra. Expert opinions as to value are not binding on the trier of fact. They are not ordinarily conclusive and generally are regarded as advisory in character. The purpose of such opinions is to assist the court it its effort to determine the ultimate facts. State, Department of Transportation and Development v. Stumpf, 519 So.2d 279 (La.App. 5th Cir.1988), writ denied, 520 So.2d 753 (La.1988). Where experts disagree as to value, the trial court has wide discretion in determining the weight that will be given expert testimony. The trial court’s findings of fact will not be disturbed on appeal unless they are clearly erroneous. Id. Although the Levee District argues the land expropriated was wet-' lands and of minimal value to the defendants, we find the record supports the trial court’s awards for the properties taken and we shall not disturb that part of the judgment which we find is not clearly erroneous.
The Levee District also argues on appeal that the trial judge erred in awarding defendants severance damages. Severance damage is any depreciation in market value of the remainder of a landowner’s property caused by the taking. Such damages are recoverable and are ordinarily calculated as the difference between the value of the remaining property before and after the taking. State, Through Department of Highways v. Bray, supra.
Hamby found that the 1983 taking caused severance damages by diminishing access to and utility of the land remaining outside the new levee. He testified that after the expropriation the number of square feet of land remaining beyond the new levee varied on each lot due to the diagonal traversal of the canal and levee across the five lots. According to Hamby, the land remaining outside the new levee on lots 43C, 44C, 45C, 46C and 47C measured 2,000, 2,600, 3,000, 3,600, and 4,200 square feet, respectively. Hamby further testified that regarding Richard and Louise Acosta’s property, it had a value of $25,250 before the taking and that after the taking the property only had a value of $15,422.00. He had valued Millicent Acosta’s property at $14,546.00 prior to expropriation and valued it at $7,391.00 after the taking.
The trial judge calculated severance damages at 17.4 cents per square foot and awarded Richard and Louise Acosta a total *19 of $1,426.80 for damages to their remaining land and Millicent Acosta a total of $1,252.80 in severance damages. In determining the award, the trial judge based his finding primarily on the testimony and report of defendants’ appraiser. After reviewing this testimony and other evidence in the record, we cannot say the trial judge’s findings are in error.
Lastly, the Levee District contends the trial judge’s award to defendants for the temporary construction servitude was excessive. The trial judge awarded defendants $100.00 per lot for the use of a temporary construction servitude measuring 25 feet across each of the five lots. Based on the record, we do not find the total $500.00 award for the temporary construction servitude to be an abuse of the trial judge’s discretion.
For the above stated reasons, we find the trial court’s judgment in favor of defendants and against the Board of Commissioners of the Lake Borgne Basin Levee District and St. Bernard Parish Police Jury to be correct. Accordingly, the judgment and award of the trial court are affirmed.
AFFIRMED.
*20 APPENDIX
[[Image here]]