640 So.2d 841 (1994)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT
v.
ESTATE OF Talmadge D. BICKHAM, Jr.
No. 93 CA 1664.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
Rehearing Denied August 17, 1994.
John W. King, Sr., Baton Rouge, for plaintiff-appellee State Dept. of Transp. and Development.
David M. Ellison, Jr., Curtis K. Stafford, Baton Rouge, for defendants-appellants Estate of Talmadge D. Bickham, Jr., et al.
Before FOIL, PITCHER and PARRO, JJ.
PITCHER, Judge.
This is an expropriation suit filed by the State, through the Department of Transportation And Development (DOTD) against the defendants, Marie McCauley Bickham, individually, and in her capacity as testamentary executrix of the Estate of Talmadge D. Bickham, *842 Jr.[1] After a trial by jury, defendants were awarded $1.25 per square foot, or $54,885.60, as just compensation for the parcel of land taken. No severance damages were awarded to defendants. For the reasons discussed below, we affirm the judgment of the trial court.

FACTS
On July 26, 1989, DOTD obtained an order under the "quick-taking" statutes, LSA-R.S. 48:441-48:460, for the expropriation of a parcel of land consisting of 1.008 acres, more or less, in Section 29, Township 5 South, Range 1 East, Greensburg Land District, owned by the defendants. The expropriation order also granted DOTD a temporary servitude for construction purposes. The parcel taken was part of a larger tract owned by defendants which covered approximately 26 acres. This tract fronted 838.34 feet on the east side of Plank Road, with additional frontage on north side of Groom Road (sometimes referred to as Pettit Road). This tract was bounded on the east by White Bayou. The parcel taken fronted the entire length of the defendants' property on Plank Road. Also, the parcel taken was located above the flood zone, except for approximately 1/10th of an acre which was located in White Bayou.
DOTD deposited the sum of $76,115.00 into the registry of the court as the estimated just compensation due the defendants for the property taken. This sum was subsequently withdrawn from the registry by defendants.
Defendants filed an answer to the expropriation proceeding in which they placed at issue the value of the property taken. Defendants claimed that just compensation for the property taken was $100,000.00. Defendants claimed an additional $50,000.00 for severance damages.
The jury found the defendants to be entitled to $1.25 per square foot, or the sum of $54,885.60, as the value of the property taken. The jury further determined that the fair annual rental for the temporary servitude was 12% of its value. The jury found that there were no severance damages. The trial court subsequently denied defendants' motion for new trial. In appealing from the judgment rendered, defendants complain of the fixing of the value of the property taken, and the failure to award severance damages.

VALUE OF PROPERTY TAKEN
Where the landowner challenges the amount DOTD deposits for compensation, a greater value must be proven by a preponderance of the evidence. State, Department of Transportation And Development v. Dietrich, 555 So.2d 1355, 1359 (La. 1990). The question of what damages will appropriately compensate the landowner is one of fact. State, Department of Transportation And Development v. Scramuzza, 608 So.2d 1069, 1075-76 (La.App. 5th Cir.1992), reversed in part and writ denied in part, 610 So.2d 809 (La.1993). Such a determination is necessarily dependent on evidence presented by expert witnesses; however, the fact finder is not obligated to accept an expert's opinion in expropriation cases, since those opinions are not binding and are merely advisory in nature. State, Department of Transportation And Development v. Scramuzza, 608 So.2d at 1076.
The most reliable and approved method for determining the fair market value of immovable property is to consider comparable sales, adjusting them to compensate for their good and bad features with regard to the subject. State, Department of Transportation And Development v. Mayet, 521 So.2d 671, 672 (La.App. 1st Cir.1988).
Much discretion is afforded the trier of fact in valuing property in expropriation cases. The evaluation of and weight given to the experts' testimony will not be disturbed on review in the absence of manifest error. Id. at 673-74.
Three appraisers testified at the trial, namely George Platt, Jr., John LeJeune and Chester Driggers. All three appraisers relied on the same three comparable sales in determining the market value of the property *843 in question. The comparable sales relied upon were as follows:
1. On July 16, 1987, 275 Corporation sold to Graves Realty a 2.16 acre tract of land on Groom Road at a stated price of $1.75 per square foot. This property was traversed by a large ditch. This tract was outside of the flood zone. (Sale No. 1).
2. On December 23, 1986, Ralph Germany sold to Wal-Mart a 9.90 acre tract of land on Plank Road at a stated price of $1.66 per square foot. This property was located directly across from the subject property and was outside of the flood zone. (Sale No. 2).
3. On April 29, 1988, Pettit Partners sold to Graves Realty a 4.05 acre tract of land fronting on the north side of Groom Road at a stated price of $1.02 per square foot. The location of this tract in relation to the flood zone was in dispute. (Sale No. 3).
Although the appraisers used the same comparable sales in determining the market value of the property, different appraisal methods were used.
John LeJeune was called as an expert witness by the defendants. LeJeune appraised only the 1.008 acres actually taken. LeJeune testified that he considered the 2.15 acres of the subject property located above the flood zone as "one economic unit." In assessing the three comparable sales, LeJeune testified that the property in Sale No. 1 had a drainage ditch which traversed the property. LeJeune stated that the owner would have to spend a lot of money to make the whole property usable.
As for Sale No. 2, LeJeune noted that larger tracts always sell for less per unit value than smaller tracts. LeJeune further testified that the property of Sale No. 3 was located almost entirely in the flood plain, thus making it less valuable than if it were located outside of the flood plain.
In addition to the above mentioned sales, LeJeune looked at other sales in the area but stated that he did not rely on these sales in making his valuation because the properties involved were substantially more valuable than the defendants' property. LeJeune ultimately determined that the best use for this property was "highway commercial."
LeJeune concluded that the property actually taken was worth $2.00 per square foot, which he reduced to an overall value of $1.75 per square foot because of the portion contained in White Bayou (approximately 1/10th of an acre). LeJeune's estimate of the value of the part taken was $76,839.84.
Chester Driggers was initially hired by DOTD to do an appraisal prior to the taking. Driggers testified that he appraised only the 1.008 acres of property actually taken because that was what his contract with DOTD required him to do. Driggers determined that the highest and best use for this property was commercial. Driggers considered the comparable sales listed above and concluded that the property taken, most of which was located above the flood zone, was worth $2.00 per square foot. This amount was adjusted down to $1.70 per square foot because a small portion of the parcel taken was located in the bed of White Bayou. Driggers signed the Certificate of Just Compensation of $76,115.00.
George Platt, Jr. also testified on behalf of DOTD. Platt was hired in November of 1991 by DOTD to appraise the property. Platt testified that his job was to appraise the entire 26 acres before the taking, and then appraise the remainder of the acreage after the taking. He stated that the difference in the two appraisals was the estimate of just compensation. Platt determined that the real estate market in that area was over supplied and thus, the highest and best use of the property was to hold it until the supply and demand became more balanced. When this occurred, the property could be sold or developed as a commercial tract. Platt also did not believe that a person would come along and buy only a "sliver" along the front of the property. Platt felt that the real investor would buy the entire 26 acres.
Platt assigned a value of $1.00 per square foot for each square foot contained within the 26 acres. Platt made no distinction between land above the flood zone and land below the flood zone in assigning the value of $1.00 per square foot, although he admitted that the *844 land outside of the flood zone was probably worth more than land inside of the flood zone. Platt also admitted that most of the property taken was not located within the flood zone. Platt stated that although the property in the flood plain was not worth $1.00 per square foot, he felt that the entire 26 acres was worth $1.00 per square foot. Platt was of the opinion that larger tracts usually sell for less per unit value than smaller tracts.
Defendants contend that Platt used erroneous information in making his appraisal. Defendants submit that Platt relied heavily on the sale of the 4.05 acre tract in assessing value in this case and erroneously concluded that the 4.05 acre tract was located outside of the flood zone. Specifically, defendants allege that the flood zone map relied upon by Platt does not show the flood zones in the City of Baker. The map relied upon by Platt was obtained from the Baton Rouge City-Parish Department of Public Works and the Flood Department. Defendants point out that if one followed the contour line on the Baton Rouge map which delineates the flood zone, it stopped at the north edge of the 4.05 acre tract of land, which is the north line of the city limits of Baker. Defendants claim that if one were to continue the line, the 4.05 acre tract of land would be included in the flood zone.
Defendants presented the testimony of Greg Breaux, a civil engineer and land surveyor, which indicated that 2.15 acres of the subject property was located above the flood zone. Breaux also testified that the 4.05 acre tract of land was within the flood zone. This was also established by the introduction of a flood zone map of Baker (Breaux Exhibit 6), which showed that the 4.05 acre tract was within the flood zone.
Platt was asked if his appraisal would change if the 4.05 acre tract of land was within the flood zone. Platt stated that this fact would change only one element that was considered. Platt reiterated that he did not feel that the value of the part taken was worth more than $1.00 per square foot or "... $43,560.00 an acre for raw land that nobody really wants."
Based on our review of the record, we cannot say that the trier of fact committed manifest error in valuing the expropriated property at $1.25 per square foot. Therefore, this argument is without merit.

SEVERANCE DAMAGES
Defendants contend that they are entitled to severance damages.
The landowner has the burden of proving severance damages with legal certainty by a preponderance of the evidence. The informed and reasoned opinion of an expert, corroborated by facts in the record, may sufficiently prove a severance damage loss, particularly where it is accepted by the trier of fact. The issue as to whether property remaining to a condemnee has suffered severance damage is essentially a question of fact. Thus, the trier of fact's factual findings as to severance damages and his evaluation of, and the weight he gives to, the testimony of expert witnesses will not be disturbed on review absent a showing of manifest error. (Citations omitted).
State, Department of Transportation And Development v. Chaisson, 477 So.2d 115, 117 (La.App. 1st Cir.1985).
LeJeune estimated that the defendants' property contained 2.15 acres of highland (land above the flood zone). LeJeune was of the opinion that the value of the land below the flood zone only changed by the diminution of the value of the highland. LeJeune valued the 2.15 acres (or 93,654 square feet) at $1.75 per square foot. After 1.008 acres was taken, the buildable area left above the flood zone was restricted to two small noncontiguous and irregular shaped parcels, one parcel measuring 0.41 acres (or 17,859.60 square feet) and one parcel measuring 0.73 acres (or 31,798.90 square feet). Because of the shape and size of these two parcels, LeJeune felt that each one sustained a diminution in value of $.75 per square foot from their former value of $1.75 per square foot. Thus, LeJeune estimated that the total severance damages amounted to $37,243.00[2].
"Severance damages may be awarded in expropriation cases when appropriate or *845 properly proven. The term `severance damages' describes those compensable damages which flow from the partial expropriation of a tract of land, i.e., the difference between the value of the remaining property before and after the taking." Id.; LSA-R.S. 48:453 B.
We find that defendants did not prove that they were entitled to severance damages. LeJeune's estimate of severance damages takes into consideration only the 2.15 acres of property located above the flood zone. LeJeune did not estimate the value of the defendants' tract of land (approximately 26 acres) before and after the taking. Therefore, the failure to award the defendants severance damages was not manifestly erroneous.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendants.
AFFIRMED.
PARRO, J., concurs.
FOIL, J., concurs in part and dissents in part. I would affirm the denial of severance damages. I would increase the amount of compensation for the value of the property taken.
NOTES
[1] The original petition named as defendant the Estate of Talmadge D. Bickham, Jr. The petition was later amended to substitute Marie McCauley Bickham, individually, and in her capacity as testamentary executrix of the Estate of Talmadge D. Bickham, Jr., as defendants.
[2] Neither Platt nor Driggers found any severance damages although Driggers did state that because of the possible change in the location of the flood zone, severance damages may exist.